Honorable Ron Fuller State Representative 10020 Rodney Parham — West Suite D Little Rock, Arkansas 72207
Dear Representative Fuller:
You have requested an Attorney General's opinion on the following issues:
 Question 1: If a person is convicted of second degree battery, convicted of being a felon in possession of a firearm, and then convicted of second degree murder, should he be considered a first offender under Act 93 simply because the offenses all occurred on the same date?
 Question 2: A. Must a judge specifically state in a criminal's commitment papers that a deadly weapon was used in the commission of the crime in order for the Department of Correction to be obliged to order a first offender to serve one-half of his sentence with good time allowances when a deadly weapon is used?
 B. If this is not explicitly included in the commitment papers, is the Department of Correction then free to treat an inmate as if a deadly weapon were not used, even if the crimes he is committed for include second degree murder, second degree battery, and felon in possession of a firearm?
 C. Does the judge also have the discretion to include this as a part of a plea bargain?
 Question 3: A. Under this Act, does the governor have the power to revoke the work-release of an inmate who he deems to be unsuitable for the program?
 B. If not, does the governor have the power to alter the "rule, regulations and procedures" of the program and then retroactively implement these changes, thereby revoking the work release of an inmate or inmates who do not meet these new criteria?
Questions 1 and 2 are in reference to Act 93 of 1977 concerning the parole eligibility of inmates in the Arkansas Department of Correction. Act 93 is codified as Ark. Stat. Ann. 43-2828 through 43-2830 (Repl. 1977 and Supp. 1985). Question 3 refers to Act 814 of 1983 concerning work release programs. Act 814 is codified as Ark. Stat. Ann. 46-117 (Supp. 1985).
Your first question asks whether a person convicted of second degree battery, of being a felon in possession of a firearm, and of second degree murder should be considered a first offender under Act 93 because the offenses all occurred on the same date. In giving the factual background for this question, you state, among other things, that there appear to be three separate convictions and three separate commitment orders, that the convictions were handed down on three separate dates, and that the battery conviction and the murder conviction appear to be two completely different instances and concern different victims.
Ark. Stat. Ann. 43-2828 provides as follows:
 Classification of inmates. — For the purposes of this Act (43-2828 — 43-2833), inmates shall be classified as follows:
 (1) First offenders shall be inmates convicted of one or more felonies but who have not been incarcerated in some correctional institution in the United States, whether local, state or federal, for a crime which was a felony under the laws of the jurisdiction in which the offender was incarcerated, prior to being sentenced to a correctional institution in this State for the offense or offenses for which they are being classified.
 (2) Second offenders shall be inmates convicted of two or more felonies and who have been once incarcerated in some correctional institution in the United States, whether local, state or federal, for a crime which was a felony under the laws of the jurisdiction in which the offender was incarcerated, prior to being sentenced to a correctional institution in this State for the offense or offenses for which they are being classified.
 (3) Third offenders shall be inmates convicted of three or more felonies and who have been twice incarcerated in some correctional institution in the United States, whether local, state or federal, for a crime which was a felony under the laws of the jurisdiction in which the offender was incarcerated, prior to being sentenced to a correctional institution in this State for the offense or offenses for which they are being classified.
 (4) Fourth offenders shall be inmates convicted of four or more felonies and who have been incarcerated in some correctional institution in the United States, whether local, state or federal, three or more times, for a crime which was a felony under the laws of the jurisdiction in which the offender was incarcerated, prior to being sentenced to a correctional institution in this State for the offense or offenses for which they are being classified.
Thus, an inmate's offender status, which affects his eligibility for consideration for parole, involves two components. The Department of Correction must consider the number of convictions the inmate has AND the number of prior incarcerations.
Under the circumstances you outline, it would be appropriate for the Department of Correction to classify the inmate as a first offender because on the date of the offenses for which he was classified, he had no prior incarcerations.
Part A of your second question asks whether a judge must specifically state in a criminal's commitment papers that a deadly weapon was used in the commission of the crime in order for the Department of Correction to be obliged to order a first offender to serve one-half of his sentence with good time allowances when a deadly weapon is used. Ark. Stat. Ann. 43-2829(B)(2) (Supp. 1985) provides in pertinent part as follows:
 Provided, however, that if the trier of fact determines that a deadly weapon was used in the commission of a crime, first offenders twenty-one (21) years of age or older shall not be eligible for release on parole until a minimum of one-half (1/2) of the sentence shall have been served with credit for good time allowances.
The only way for the Department of Correction to know if the trier of fact determines that a deadly weapon was used in the commission of a crime is if the commitment papers issued by the trial court so reflect. Thus, it is my opinion that the commitment papers must specifically state that a deadly weapon was used in the commission of the crime in order to require a first offender to serve one-half of his sentence before he becomes eligible for release on parole.
Part B of your second question asks if the fact that a deadly weapon was used in the commission of the crime is not explicitly included in the commitment papers, is the Department of Correction then free to treat an inmate as if a deadly weapon was not used, even if the crimes for which he is committed include second degree murder, second degree battery, and felon in possession of a firearm. I have already quoted the pertinent language from Ark. Stat. Ann. 43-2829(B)(2) (Supp. 1985) which states that if the trier of fact determines that a deadly weapon was used in the commission of a crime the first offender must serve one-half of his sentence before becoming parole eligible. The trier of fact is the jury in a jury trial or the trial court in a bench trial. Thus, it is not a matter of whether the Department of Correction is free to treat an inmate as if a deadly weapon was or was not used. It does not involve the discretion of the Department. Before the provision requiring that one-half of the sentence be served before the inmate becomes eligible for parole may be invoked, the trier of fact must determine that a deadly weapon was used in the commission of the crime. If that determination is not made by the trier of fact and is not included in the commitment papers, the Department of Correction may not require the inmate to serve one-half of his sentence before he becomes eligible for parole.
Part C of your second question asks whether a judge has the discretion to include this as a part of a plea bargain. I assume that you mean does the trial judge have the discretion to omit making a determination that a deadly weapon was used in the commission of the crime as a part of a plea bargain. Certainly there is no statute which requires a trial judge to make a determination of whether or not a deadly weapon was used in the commission of the crime when he takes a plea of guilty. Thus, in the sense that it is not required by statute, it is discretionary.
Part A of your third question asks whether the governor has the power to revoke the work release of an inmate who he deems to be unsuitable for the program. Your question refers to language contained in Act 814 of 1983, codified at Ark. Stat. Ann. 46-117. The language you refer to reads as follows:
 The Board of Correction and the Director of Correction will govern the administration of this program with the promulgation of rules, regulations and procedures subject to the continuing review by the Governor who shall have the right to revise and rescind any such rules, regulations and procedures.
Nothing in the language you refer to or in any other part of 46-117 authorizes the governor to revoke the work release of an inmate who he deems to be unsuitable for the program. Therefore, it does not appear that the Governor has that authority.
Part B of your third question asks whether, if the governor does not have the power to revoke the work release of an inmate, the governor has the power to alter the "rules, regulations and procedures" of the program and then retroactively implement these changes, thereby revoking the work release of an inmate or inmates who do not meet these new criteria. The language you refer to in 46-117 clearly states that the rules, regulations and procedures promulgated by the Board of Correction and the Director of Correction are subject to the continuing review by the Governor who shall have the right to revise and rescind any such rules, regulations and procedures. Thus, the governor does have the power to revise and rescind. However, the retroactive application of revisions made by the Governor may offend due process considerations and, therefore, is not advisable.
This opinion, which I hereby approve, was prepared by Assistant Attorney General Jack Gillean.